UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH LEONARD** | **CASE NO. 6:22-CV-00068** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

### Administrative Proceedings

Claimant, Joseph Leonard, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for supplemental security income (SSI) benefits alleging disability beginning on May 6, 2019. His application was denied. He then requested a hearing, which was held on September 25, 2020 before Administrative Law Judge Charlotte White. The ALJ issued a decision on April 30, 2021, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the

decision. (Rec. Doc. 6-1, p. 13-24). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 6-1, p. 10-12). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on April 28, 1979. He was 40 years old on the alleged disability onset date and 42 years old at the time of the ALJ's decision. He alleged that he has been disabled since May 6, 2019 due to impaired intellect, schizophrenia, and/or bipolar disorder. He did not finish elementary grades, during which time he was in special education, and he was skipped through grades in social promotion. He dropped out in ninth grade. He received social security benefits as a child and into adulthood until he was incarcerated for several years. He attempted to work in the past, but he was almost hit by cars a couple of times, and other people would hurt him, because they could not work with him. He lives with his girlfriend and stepson. He has been institutionalized multiple times since childhood and has been on mental health medication for years. Although he had kidney problems in his teens, he has not significant physical problems. He testified that he is unable to work with others, because he feels the urge to hurt people, which leads to altercations. He

has been on strong mental medications, which his girlfriend ensures he takes. (Rec. Doc. 6-1, p. 34-51).

The medical records in the record reveal the following pertinent history:

- Records from Franklin Senior High School in 1996 reveal a spotty educational history with Claimant earning mostly Ds and Fs. He was sent to homebound education and enrolled in Charter Behavioral Health as a young teen after multiple disciplinary issues. (Rec. Doc. 6-1, p. 253-68).

- In a December 2008 psychological report prepared for disability services, Dr. David Greenway, clinical psychologist, reported that Claimant's performance in simple tests of attention and concentration were worse than that typically seen in the demented elderly. The results of a test of feigning were positive and malingering was likely. Findings were felt to be minimally reliable as an estimate of his functional status. At that time, Claimant had been married for five years and had three children, but otherwise he did not get along with any family members. He was not then living with his wife apparently due to domestic violence issues which had put him in jail. Following testing, Dr. Greenway concluded that findings were most consistent with diagnoses of malingering, polysubstance dependency, and antisocial personality disorder, though intellectual testing was invalid due to his poor effort. (Rec. Doc. 6-1, p. 271-74).

- Claimant was admitted to the psychiatric ward at Allen Parish Hospital in June 2019 for depression with suicidal ideation. He was then sent to St. Mary Behavioral Health, with multiple medications noted, including Trazodone, Sertraline, Lorazepam, and Lithium. According to the Initial Psychiatric Evaluation by Dr. Jayendra Patel, Claimant stated that he got into a fight with his girlfriend and had suicidal thoughts as he was drinking alcohol. He was hearing voices and seeing things/shadows following him, which had happened to him in the past. It was noted that he had been inpatient at St. Mary in 2014, that he self-medicated with alcohol, and he tested positive for cocaine. His psychiatric history noted several prior inpatient treatment and multiple suicide attempts. He had most recently cut himself three years prior. He had been incarcerated for domestic abuse and assault. He was divorced with three teenaged children, and he had a family history of mental issues. (Rec. Doc. 6-1, p. 277-89).

- Records from Claimant's 2019 treatment at St. Mary Behavioral Health further report a notable history of violent crimes, substance abuse, and mental illness. (Rec. Doc. 6-1, p. 292-97). Following his discharge and throughout 2019 and up to the time of the hearing, he was attending aftercare psych appointments with South Central Louisiana Human Services Authority for mental medication management. The assessments were major depressive disorder and schizoaffective disorder, bipolar type. (Rec. Doc. 6-1, p. 306-28).

- Dr. Sandra Durdin, clinical psychologist, did another psychological evaluation in September 2019 for disability services. She stated Claimant did not cooperate with the evaluation, that he appeared to try to malinger psychosis, and he malingered on the Mental Status, and the WAIS-IV. He failed to score no matter how low the level of difficulty was. Dr. Durdin concluded that the testing was invalid, but his estimated adaptive and intellectual functioning may be low average. He did not meet criteria for schizophrenia by developmental history, treatment history symptoms or presentation. Dr. Durdin ultimately deferred in reaching any definitive conclusions based on his test results, but her diagnostic impression was malingering and provisional unspecified personality disorder with antisocial traits. (Rec. Doc. 299-303).

- In recent psych visits in 2020, Claimant requested a female provider. By August 2020, he reported the voices were less, but they sometimes told him to beat someone or run away. He recalled growing up near a swamp and had seen "a different kind of being," and that he had been paranoid ever since. The primary assessment remained as schizoaffective disorder, bipolar type. (Rec. Doc. 6-1, p. 339-51).

The ALJ found that Claimant was not disabled, because he could perform light duty work with numerous restrictions to accommodate his mental disorder, and that a significant number of qualifying jobs existed in the economy. (Rec. Doc. 6-1, p. 18-24). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren*

*v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. Entitlement to Benefits

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of

substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. <u>Evaluation Process and Burden of Proof</u>

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can

perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since May 14, 2019. This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: learning disorder by history; substance use disorder; and schizoaffective disorder, bipolar type. (Rec. Doc. 6-1, p. 18). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 6-1, p. 19-20). Claimant does not challenge this finding.

The ALJ found Claimant had the residual functional capacity to perform light duty work subject to a multitude of limitations aimed at accommodating his mental issues. (Rec. Doc. 6-1, p. 20-23). Claimant challenges this finding.

At step four, the ALJ found Claimant had no past relevant work. (Rec. Doc. 6-1, p. 23). Claimant does not challenge this finding.

At step five, the ALJ found Claimant was capable of performing several available qualifying jobs. (Rec. Doc. 6-1, p. 23-24). Claimant challenges this finding.

### E. The Allegations of Error

Claimant alleges the ALJ erred by 1) failing to observe the duty to develop arguments both for and against granting benefits; 2) applying an improper "pick and choose" evaluation of the evidence; and 3) determining that Claimant could sustain employment. The Court interprets Claimant's allegations of error as a challenge to the ALJ's RFC finding.

**F.** **Whether the ALJ erred in finding that Claimant was capable of maintaining employment as set forth in assessed conditions of the RFC finding.**

Claimant challenges the ALJ's finding as a failure to consider evidence supporting that he was entitled to benefits for many years prior to his incarceration and that Claimant has never been able to maintain a job due to his mental impairments and his inability to maintain relationships. Claimant further challenges the RFC finding as inconsistent with his inability to perform work on a regular and continuous basis.

Contrary to Claimant's essentially non-existent work history, the ALJ found that Claimant is capable of performing light work except that he can only carry out simple, 1-2 step tasks with appropriate breaks every two hours over the course of a workday. The ALJ further found:

> He can perform activities within a schedule, maintain regular attendance, make simple work-related decisions, be aware of normal hazards, travel to unfamiliar places, and set realistic goals. The claimant can respond appropriately to typical instructions, can be redirected, and relate to others on a superficial work basis having limited public contact. He can adapt to changes in the work like setting and should not perform any fast food work, quota work (so many widgets per minute) and no conveyor belt work. He can respond to supervisors and coworkers on a frequent basis. He can work with supervisors and coworkers on a superficial work basis and can only have occasional contact with the public. In addition, he would be off task for up to 5% of the total workday.

(Rec. Doc. 6-1, p. 20).

A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing

basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), citing 1996 WL 374184, *1 (S.S.A.1996). The Fifth Circuit further explained as follows:

> A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work.... RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.... The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d at 620 (cleaned up).

The Court agrees that the ALJ erred in finding that Claimant could work on a regular and continuous basis. Rather than resolving inconsistencies in the evidence, the ALJ's determination is itself inconsistent. For instance, the ALJ found both that Claimant "does not have any difficulty getting along with others – is very respectful towards people…[h]owever, he is generally only around his family," and that Claimant "acknowledged difficulty getting along with others, particularly with his family when he was younger." (Rec. Doc. 6-1, p. 21). Similarly, the ALJ found that Claimant suffered from the severe impairment of schizoaffective disorder, bipolar type, yet the ALJ ignored Claimant's substantial history of mental health treatment,

including evidence of multiple inpatient and outpatient treatments. Moreover, the record is replete with evidence of Claimant's inability to work with others due to his mental impairments. He has a long history of violence (resulting in incarceration), substance abuse, mental health treatment, both inpatient and outpatient, and noted instances of suicide ideation. He has taken multiple medications for years for these issues.

The ALJ considered Dr. Durdin's opinion as somewhat persuasive; however, she considered Dr. Greenway's earlier opinion as unpersuasive. Yet, both psychologists concluded, after invalid testing, that Claimant was malingering but that he at least had a personality disorder with antisocial traits. According to the ALJ's own finding, Claimant also had schizoaffective disorder, bipolar type. Thus, despite Claimant's invalid test results, the ALJ's inconsistent findings warrant remand for re-evaluation of Claimant's RFC. The ALJ should especially consider Claimant's history of mental health treatment, his inability to work with others, as evidenced over the course of his life since childhood, and his history of receiving benefits for the same impairments from which Claimant appears to continue to suffer.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the

fourth sentence of 42 U.S.C. § 405(g) with instructions to again evaluate the claimant's residual functional capacity in light of his history of mental health treatment, his inability to work with others, as evidenced over the course of his life since childhood, and his history of receiving benefits for the same impairments from which Claimant appears to continue to suffer. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[1]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

---

[1] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 3rd day of October, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).